**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FIZZICS GROUP, INC.,[1] | Case No. 19-10545 (KBO) |
| Debtor. | |

*AMENDED* PLAN OF REORGANIZATION OF THE DEBTOR
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**BIELLI & KLAUDER, LLC**

Dated: December 16, 2019
Wilmington, Delaware

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

*Counsel to the Debtor*
*and Debtor-In-Possession*

---

[1] The last four numbers of the Debtor's tax identification number are 2107. The Debtor's corporate address is P.O. Box 308, New Hope, Pennsylvania 18938; its principal place of business is 41 Simon Street, Suite 21, Nashua, NH 03060.

## Preliminary Statement

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby proposes the following Amended Plan of Reorganization (the "Plan").[2] Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations, and the post-petition disposition of substantially all of the Debtor's assets, and a summary and analysis of the Plan. All Holders of Claims should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals— before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Claims and Equity Interests against the Debtor. With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Debtor, and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Equity Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3]  If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Case dismissed or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

## I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time and Governing Law

1.    For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article I of this Plan.

[3] Equity Interest Holders in the Debtor will receive nothing under the Plan, and therefore, the Class of Equity Interests (Class 3) is Impaired and is deemed to reject the Plan.

such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to a part includes the whole, except where the context clearly requires otherwise; (g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.      "Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtor within twenty (20) days before the Petition Date to the extent that goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or Allowed under Section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date; (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date; and (h) any cure amounts related to the assumption and assignment of executory contracts and unexpired leases arising after the Petition Date.

2.      "Administrative Claims Bar Date" means the applicable last date set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim that

arose between the Petition Date and the Effective Date. The Administrative Claims Bar Date shall be thirty (30) days after service of notice of the occurrence of the Effective Date.

3.       "Allowed" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that has been scheduled by the Debtor on its Schedules as other than disputed, contingent, or unliquidated and as to which Debtor, the Reorganized Debtor or other party in interest have not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a Proof of Claim as to which no objection has been filed on or before the Claims Objection Deadline; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Debtor on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Claim, or Priority Tax Claim executed by the Debtor and approved by the Bankruptcy Court; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim that is allowed pursuant to the terms of this Plan.

4.       "Allowed Claim" means a Claim that has been Allowed.

5.        "Ballot" means the ballot upon which the Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

6.       "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

7.       "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over this Chapter 11 Case.

8.       "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

9.       "Bar Date" means (i) 5:00 p.m. prevailing Eastern time on July 1, 2019, which is the date set by the Bankruptcy Court as the last day for filing a Claim arising prior to the Petition Date against the Debtor in this Chapter 11 Case, and (ii) 5:00 p.m. prevailing Eastern time on September 9, 2019, which is the date set by the Bankruptcy Court as the last day for any Governmental Unit to file a Claim arising prior to the Petition Date against the Debtor in this Chapter 11 Case.

10.       "Beneficiaries" means Holders of Allowed Claims entitled to receive Distributions from the Reorganized Debtor under the Plan, whether or not such Claims were Allowed on the Effective Date.

11.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

12.    "<u>Cash</u>" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

13.    "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders, and/or any other entities under the Bankruptcy Code, and any and all state and common-law claims for breach of fiduciary duty against the Debtor's current directors and officers or former directors and officers, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

14.    "<u>Chapter 11 Case</u>" means the Chapter 11 case commenced when the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date.

15.    "<u>Claim</u>" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against a Debtor, including, but not limited to:  (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

16.    "<u>Claimant</u>" means the Holder of a Claim.

17.    "<u>Claims Objection Deadline</u>" means (a) 180 days after the Effective Date, or (b) such other period for objecting to Claims as may be fixed by an order of the Bankruptcy Court, following notice to Holders of Disputed Claims and an opportunity to be heard.

18.    "<u>Class</u>" means a category of Holders of Claims or Equity Interests, as set forth in <u>Article III</u> of the Plan.

19.    "<u>Common Equity Interest Holders</u>" means the Holders of common stock of the Debtor at the time of the Petition Date.

20.    "<u>Confirmation</u>" means the entry of the Confirmation Order, subject to all conditions specified in <u>Article VII</u> of the Plan having been (a) satisfied or (b) waived pursuant to <u>Article VII</u>.

21.    "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

22.    "<u>Confirmation Hearing</u>" means the hearing before the Bankruptcy Court to consider confirmation of the Plan.

23.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which shall be in the form and manner acceptable to the Proponent.

24.    "<u>Consummation</u>" or "<u>Consummate</u>" means the effectuation of the Plan upon the occurrence of the Effective Date.

25.    "<u>Contingent Claim</u>" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

26.    "<u>Creditor</u>" means any Holder of a Claim against Debtor that arose on or prior to the Petition Date.

27.    "<u>Debt</u>" means liability on a Claim.

28.    "<u>Debtor</u>" means Fizzics Group, Inc.

29.    "<u>Disallowed Claim</u>" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been filed; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been filed.

30.    "<u>Disclosure Statement</u>" means the Debtor's Disclosure Statement dated November ___, 2019, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

31.    "<u>Disclosure Statement Approval Order</u>" means the order from the Bankruptcy Court dated _____, 2019, approving the Disclosure Statement and relevant voting and ballot procedures.

32.    "<u>Disputed</u>" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed, or contingent, and as to which no Proof of Claim has been filed; (b) as to which the Debtor, or any other party in interest

has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

33.    "Disputed Claim" means:  (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtor in the Schedules as disputed, contingent, or unliquidated, and as to which no Proof of Claim has been filed; or (iii) a Claim that is not listed in the Schedules. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

34.    "Distributions" means the distributions of Cash to be made in accordance with the Plan.

35.    "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

36.    "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

37.    "Effective Date" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article VII of the Plan have been satisfied, unless waived. Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Debtor.

38.    "Entity" means an entity as defined in Bankruptcy Code Section 101(15).

39.    "Equity Interest" means any equity interest in the Debtor, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock of any class, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.  For avoidance of doubt, Equity Interest includes both Common and Preferred Equity Interests.

40.    "Estate" means the estate of the Debtor in this Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

41.    "Exculpated Parties" means, collectively, (a) the Debtor and (b) the Debtor's current officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, professionals, agents, and representatives (in each case in their respective capacities as such).

42.    "Final Decree" means the decree defined under Bankruptcy Rule 3022.

43.     "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

44.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

45.     "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

46.     "Holder" means an Entity holding a Claim or Equity Interest.

47.     "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

48.     "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial Distribution shall be made to the Holders of Allowed Claims, as determined by the Reorganized Debtor in its reasonable discretion.

49.     "Insider" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

50.     "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

51.     "Litigation" means the interest of the Estate, and the Debtor, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtor. Litigation includes any action not otherwise adjudicated, waived, released, abandoned, sold or compromised pursuant to any Order of this Court including, without limitation, an action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtor; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtor; (iv) for compensation for damages incurred by the Debtor; and (v) equitable subordination actions against Creditors.

52.     "Litigation Recovery" means any Cash or other property received by the Debtor, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of

settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

53.     "New Common Stock" means the new common stock issued by the Reorganized Debtor on or shortly after the Effective Date to the Holders of Claims and Equity Interests as set forth in this Plan.

54.     "New Common Stock Price" means the price per share of the New Common Stock, which shall initially equal $.50 per share.

55.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

56.     "Petition Date" means March 12, 2019, the date on which Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

57.     "Plan" means this Plan of Reorganization, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

58.     "Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, any plan support letters, Exhibits, or other documents or pleadings filed by the Debtor relating to the Plan.

59.     "Plan Interest Rate" means the rate of interest determined by the Bankruptcy Court upon Confirmation, if necessary, for purposes of the application of Section 1124 (impairment) or Section 1129(b) of the Bankruptcy Code (Present Value), as the case may be, to the Distributions to certain Creditors under the Plan. The Plan Interest Rate may be different for different Classes of Claims.

60.     "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

61.     "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than ten (10) calendar days prior to the earlier of the Plan Objection Deadline or the deadline for submission of Ballots, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

62.     "Preferred Equity Interest Holders" means the Holders of preferred stock in the Debtor at the time of the Petition Date.

63.     "Present Value" means the present value as of the Effective Date of Cash payments made under the Plan by the Debtor using the Plan Interest Rate.

64.     "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Bankruptcy Code Section 507(a).

65.     "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

66.     "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of:  (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable Distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

67.     "Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

68.     "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

69.     "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting document

70.     "Proponent" or "Plan Proponent" means the Debtor.

71.     "Record Date" means the date as of which the identity of Holders of Claims and Equity Interests is set for purposes of determining the Entities entitled to receive and vote on the Plan and to make elections concerning the releases contained in Section VIII(F) of the Plan. Pursuant to the Disclosure Statement Approval Order, this date is _____.

72.     "Released Parties" means, collectively, the Debtor's current officers, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, professionals, agents, and representatives (in each case in their respective capacities as such).

73.     "Reliant" means MCA Fixed Payment, LLC d/b/a Reliant Funding.

74.     "Reorganized Debtor" means Reorganized Fizzics Group, Inc.

75.     "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from

time to time, and the Debtor's statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

76.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

77.    "Share" means a unit of equity in the Debtor or Reorganized Debtor, as the case may be.

78.    "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Debtor makes a Distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

79.    "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

80.    "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against a Debtor.

81.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

82.    "Unsecured Claim" means any Claim against the Debtor or its Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim, or Unsecured Noteholder Claim.

83.    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

84.    "Voting Deadline" means the deadline established by the Bankruptcy Court for Holders of Impaired Claims entitled to vote on the Plan to submit a Ballot indicating their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

85.    "Voting Instructions" means the instructions for voting on the Plan contained in Article IV of the Disclosure Statement and in the Ballots.

## II.
## UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS

### A. Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following Administrative Tax Claims (of which there are none) or other Claims in a Class:

### B. Administrative Claims

Except to the extent stated in Section II(C) below, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive Cash: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or the Reorganized Debtor, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), such fees will be paid as and when due under applicable law.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file requests or applications for payment by the applicable deadline provided for herein shall be prohibited and forever barred, estopped and enjoined from asserting such claims against the Estate, the Reorganized Debtor, or their successors or assigns, or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

The Administrative Claims Bar Date for all Administrative Claims (other than Professional Fee Claims) shall be thirty (30) days after service of notice of the occurrence of the Effective Date. The Debtor shall serve a notice, within five days after the Effective Date, of the Administrative Claims Bar Date on all potential Holders of Administrative Claims. Notwithstanding the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date, and the U.S. Trustee shall not be required to file a request for payment of such fees.

### C. Types of Administrative Fee Claims

1. **Professionals:** Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or

required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

        2.     **Fee Claims**: The Chief Executive Officer holds an Administrative Claim of approximately $28,255.50 relating to work for the post-petition Debtor that was necessary and essential to this Bankruptcy Case. The Chief Technology Officer of the Debtor holds an Administrative Claim of approximately $28,255.50 relating to work for the post-petition Debtor that was necessary and essential to this Bankruptcy Case.

        In consideration of (a) a waiver of their respective Administrative Fee Claims, and (b) a waiver of their respective General Unsecured Claims (in the amount of approximately $17,715.17 in the case of the Chief Technology Officer and approximately $39,700.00 in the case of the Chief Executive Officer), each shall receive one and one-half percent (1.5%) of the New Common Stock in the Reorganized Debtor, to be issued on the Effective Date.

### III.
### CLASSIFICATION AND TREATMENT OF
### CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.**    **Summary**

        The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. There is only a single Class for each category of Claims or Equity Interests into which all such Claims or Equity Interests against any one or more of the Debtor are classified.

**B.**    **Classification and Treatment of Claims against the Debtor**

        The classification of Claims and Equity Interests against the Debtor pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Claim of Reliant | Impaired | Entitled to Vote |
| Class 2 – Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 – Priority Claims | Impaired | Entitled to Vote |

| Class 4 –Equity Interest Holders in Debtor | Impaired | Deemed to Reject; Not Entitled to Vote |
|---|---|---|

1.    Class 1 – Claim of Reliant

**a.    Classification:**  Class 1 consists of the Claim of Reliant, which purports to hold a Claim of $83,000.00.

**b.    Treatment:**  Reliant purports to have a Secured Claim as to the Debtor. However, after due investigation, the Debtor believes in good faith that Reliant has no Secured Claim, but rather has been operating as though its Claim was, in fact, Secured by the Debtor's Assets. Therefore, the Debtor proposes the following treatment for Reliant:

(i)    Contemporaneously with the filing of this Plan, the Debtor shall file or has filed a complaint to determine the extent, priority, and validity Reliant's Claim. The Debtor believes and avers that Reliant's purported lien is invalid and should be of no effect, and therefore its Claim should be reclassified as a General Unsecured Claim. The Debtor has filed amended Schedules D and F, reflecting the unsecured status of Reliant.

(ii)    To the extent that the Bankruptcy Court determines that Reliant does in fact have a valid lien on the Debtor's assets, the Debtor shall pay Reliant the sum of two thousand five hundred dollars ($2,500.00) per month for thirty-three (33) months, starting on the month after the Court so determines, with the balance due on the thirty-fourth (34th) month from the date the Bankruptcy Court so determines.

**c.    Voting:**  Class 1 is an Impaired Class, and Reliant is entitled to vote to accept or reject the Plan.

2.    Class 2 – General Unsecured Claims

**a.    Classification:**  Class 2 consists of General Unsecured Claims. Exhibit A to the Disclosure Statement is a list of the General Unsecured Claims. The total undisputed dollar amount of such General Unsecured Claims is approximately $994,534.69 (including the $83,000.00 Claim of Reliant; *see* Section III(B)(1), and not including the General Unsecured Claims of the Chief Executive Officer or Chief Technology Officer, which will be waived as stated *supra*). Claims to which the Debtor plans to object would, if Allowed, increase the dollar amount of General Unsecured Claims to approximately $1,432,988.92. Other purported creditors have filed Claims which the Debtor believes are duplicative of known General Unsecured Claims; some Creditors have filed Claims in amounts substantially more than the amounts appearing in the Debtor's books and records; and the Debtor believes that some Creditors have been wholly or partly compensated for the Claims filed. The Debtor reserves the right to object to any General Unsecured Claim according to Section V(C) below.

**b.      Treatment:**

In full and final satisfaction, settlement, discharge and release of, and in exchange for, each Class 2 Allowed General Unsecured Claim, the Holders of an Allowed General Unsecured Claim in Class 2 shall receive two (2) cash distributions, as follows: (a) the first on or before the first anniversary of the Effective Date based on the Allowed General Unsecured Claim Holder's *pro rata* share of fifty thousand dollars ($50,000.00); and (b) the second on or before the second anniversary of the Effective Date based on the Allowed General Unsecured Claim Holder's *pro rata* share of one hundred thousand dollars ($100,000.00).

(i)      If Reliant's Claim is determined to be unsecured and all Claims are Allowed in the amount sought by a Creditor, each General Unsecured Creditor shall receive approximately 10.47% of its Allowed General Unsecured Claim.

(ii)     If Reliant's Claim is deemed to be secured and all Claims are Allowed in the amount sought by a Creditor, each General Unsecured Creditor shall receive approximately 11.11% of its Allowed General Unsecured Claim.

(iii)    If Reliant's Claim is determined to be unsecured and all disputed Claims are reduced to the undisputed Claim amount, each General Unsecured Creditor shall receive approximately 15.09% of its Allowed General Unsecured Claim.

(iv)     If Reliant's Claim is deemed to be secured and all and all disputed Claims are reduced to the undisputed Claim amount, each General Unsecured Creditor shall receive approximately 16.40% of its Allowed General Unsecured Claim.

To the extent that a General Unsecured Claim to which the Debtor objects is ultimately allowed, the Debtor may make another Distribution under the terms and according to any timing requirements directed by the Bankruptcy Court. In addition, the Chief Executive Officer and Chief Technology Officer shall waive their General Unsecured Claims as stated in Section II(C) and II(D), *supra*.

**c.      Voting:**  Class 2 is an Impaired Class and Holders of Class 2 Unsecured Claims are entitled to vote to accept or reject the Plan.

3.      Class 3 – Priority Claim Holders

**a.      Classification:**  Class 3 consists of the Priority Claims Holders in the Debtor. These are held by employees of the Debtor, each in the amount of approximately $15,625.00.

**b.      Treatment:** In exchange for full and final satisfaction, settlement, release and discharge of each Priority Claim, the Reorganized Debtor shall issue each Holder of Priority Claims one percent (1.0%) of the New Common Stock in the Reorganized Debtor, to be issued on the Effective Date.[4] In addition, the Holders of Priority Claims may have the option to enter into an employee incentive program after the Effective Date.

**c.      Voting:** Class 3 is and Impaired Class and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

4.      <u>Class 4 –Equity Interest Holders in Debtor</u>

**a.      Classification:**  Class 4 consists of the Equity Interest Holders in the Debtor. Class 4 is comprised of all Equity Interest Holders, whether holding Common Stock or Preferred Stock in the Debtor.[5] This Class is comprised of approximately sixteen (16) Common Equity Interest Holders and approximately four hundred fifty-eight (458) Preferred Equity Interest Holders.

**b.      Treatment:** By virtue of this Plan, the Debtor shall cancel all outstanding Equity Interests in the Debtor, whether issued or not, including warrants and options, effective on the Confirmation Date. Further, by virtue of this Plan, any shareholder agreement(s) in or relating to the Debtor are hereby cancelled, revoked, and of no effect.

**c.      Voting:** Class 4 is Impaired and, as it is deemed to reject the Plan, and is not entitled to vote on the Plan.

## IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.      <u>Voting Classes</u>**

Each Holder of an Allowed Claim or Interest in Classes 1 through 3 are entitled to vote either to accept or to reject the Plan (Class 4 Interest Holders are deemed to reject the Plan). Only those votes cast by Holders of Allowed Claims or Interests shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.      <u>Acceptance by Impaired Classes</u>**

---

[4] Shares in the Reorganized Debtor may be issued pursuant to this Plan since the issuance is exempt from registration, and the Reorganized Debtor is not an 'underwriter,' under the Securities and Exchange Commission pursuant to Sections 1145(a)(1), 1145(b)(1)(D), and 1145(b)(3) of the Bankruptcy Code and 15 U.S.C. Section 77b(a)(11).

[5] Since Common Stock and Preferred Stock in the Debtor hold equal par value and equal share price according to the Articles of Conversion and Certificate of Incorporation dated May 5, 2017, these classes of Shares are treated equally for the purposes of this Plan.

An Impaired Class of Claims or Interests shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Interests actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Interests actually voting in such Class have voted to accept the Plan.

## C.    Nonconsensual Confirmation

The Debtor reserves the right to amend the Plan in accordance with Section X.F of the Plan or undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both. With respect to Impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Debtor shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.    Payments Pursuant to the Plan

All payments proposed to be made to creditors pursuant to the Plan will be made from cash flow generated by the operations of the Reorganized Debtor. Exhibit A to this Plan is a schedule of the Reorganized Debtor's projected income and expenses for 2020, accounting for Distributions to General Unsecured Creditors and others.

## B.    Litigation

Except as otherwise provided in this Plan, all Litigation is retained, vested in the Reorganized Debtor, and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Reorganized Debtor. To the extent any Litigation is already pending on the Effective Date, the Reorganized Debtor will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

## C.    Full and Final Satisfaction

INTENTIONALLY OMITTED.

## D.    Distribution Procedures

1.    Distribution Dates. The Reorganized Debtor shall make Distributions to Holders of Claims as provided in Article III of the Plan.

2.    Subsequent Distributions. Any Distribution not made on the Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution

Date shall be held by the Reorganized Debtor for Distribution as the Bankruptcy Court may direct. No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.      <u>Distribution Record Date</u>. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Reorganized Debtor as of the Distribution Record Date.

4.      <u>Manner of Cash Payments Under the Plan</u>. Cash payments made pursuant to the Plan shall be in United States dollars by checks or wire transfers drawn on a domestic bank selected by the Reorganized Debtor, at the option of the Reorganized Debtor.

5.      <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Reorganized Debtor by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of one hundred eighty (180) days after the Effective Date or one hundred eighty (180) days after the date of issuance of such voided check. After the later of such dates, any Holder of a Claim relating to a voided check shall not be entitled to any Distribution from the Reorganized Debtor on account of such Claim, and the proceeds of such check shall revest in and become the property of the Reorganized Debtor as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

## E.      **Resolution of Disputed Claims**

1.      <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.      <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the right to the exclusion of all others (except as to the Professionals' applications for allowance of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make, file, prosecute, settle, withdraw, or resolve objections to Claims. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Reorganized Debtor elects to withdraw any such objection or the Reorganized

Debtor and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

   3. <u>Objection Deadline</u>. All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline.

   4. <u>Estimation of Claims</u>. At any time, (a) prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Reorganized Debtor, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

   5. <u>Disallowance of Certain Claims</u>. Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Reorganized Debtor, shall be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Reorganized Debtor.

   6. <u>Adjustment Without Objection</u>. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtor or the Reorganized Debtor, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**F.** **Delivery of Distributions and Unclaimed Property**

   1. <u>Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Reorganized Debtor at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Reorganized Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the

Reorganized Debtor shall make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor deems appropriate, but no Distribution to any such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in the Plan. The Reorganized Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.  On or about the time that the Final Distribution is made, the Reorganized Debtor may make a charitable donation with undistributed funds if, in the reasonable judgment of the Reorganized Debtor, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtor or the Reorganized Debtor.

2.      <u>Unclaimed Property</u>. Except with respect to property not distributed because it is being held in a Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of one hundred eighty (180) days from the Effective Date or one hundred twenty (120) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtor. All funds or other property that vest or revest in the Reorganized Debtor pursuant to this Article shall be distributed by the Reorganized Debtor to the other Holders of Allowed Claims in accordance with the provisions of the Plan.

## G.      **Withholding Taxes**

In connection with making Distributions under this Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.

## H.      **U.S. Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Reorganized Debtor shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Case.

**VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.     **Assumption and Rejection of Executory Contracts and Unexpired Leases**

Pursuant to this Plan, the Debtor hereby assumes its commercial real property lease for premises located in New Hampshire. In assuming this lease, the Debtor hereby elects to continue to perform its obligations under this lease. That lease is not in default. Any objection to the assumption of that lease must be filed on the Objection Date, unless the Bankruptcy Court sets an earlier time for such objection.

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed or rejected by order of the Bankruptcy Court, (ii) are explicitly assumed herein, or (iii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code (in particular, any shareholder agreement(s) of the Debtor is hereby rejected). Notwithstanding the foregoing, nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and its Estate. Furthermore, this Plan shall be deemed a motion to assume such insurance contracts. Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and the Reorganized Debtor shall bear no liability for costs associated with such matters.

B.     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Bankruptcy Court and served upon the Debtor within thirty (30) days after the earlier of (a) service of a notice of the occurrence of the Effective Date, which shall include the filing deadline and identify known contracts and leases being rejected pursuant to Confirmation, or (b) service of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims that are ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article III hereof, and will share in the pool of funds available for recovery *pro rata* with other Allowed General Unsecured Claims. However, any Claims based upon the rejection of executory contracts shall not receive Shares in the Reorganized Debtor.

C.     **D&O Liability Insurance Policies**

Notwithstanding anything herein to the contrary, as of the Effective Date, the Reorganized Debtor shall assume all of the Debtor's existing D&O Liability Insurance Policies pursuant to Section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of the D&O Liability

Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an executory contract that has been assumed by the Reorganized Debtor under the Plan as to which no Proof of Claim need be Filed. Nothing in this Plan shall diminish or impair the enforceability of the D&O Liability Insurance Policies and related agreements that may cover Claims and Causes of Action against the Reorganized Debtor or any other Entity.

**VII.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**OF THE PLAN AND TO THE EFFECTIVE DATE**

**A.**     **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtor: (i) the Bankruptcy Court shall have approved the Disclosure Statement, and (ii) the Bankruptcy Court shall have signed the Confirmation Order and entered it on the docket of the Debtor's Chapter 11 Case.

**B.**     **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section VII.A is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**     **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of the following condition precedent, any one or more of which may be waived by the Debtor: the Confirmation Order shall have become a Final Order which is not subject to any stay of effectiveness.

**D.**     **Effective Date**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.

**VIII.**
**EFFECTS OF CONFIRMATION**

**A.**     **Binding Effect of Plan**

The provisions of the confirmed Plan shall bind the Reorganized Debtor, any Entity acquiring property under the Plan, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. This Plan shall also bind any taxing authority, recorder of deeds, or

similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.**     **Vesting of Property of Debtor**

Upon the Effective Date, subject and pursuant to the provisions of the Plan, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Reorganized Debtor and shall be retained by the Reorganized Debtor for the purposes contemplated under this Plan.

**C.**     **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Reorganized Debtor shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, and in relevant documents, agreements, and instruments contained in the Plan Supplement, which Plan Supplement documents, agreements, and instruments shall be in form and substance acceptable to the Proponent. Following the Effective Date, the Reorganized Debtor may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**D.**     **Limitation of Liability**

**Upon and effective as the Effective Date, the Exculpated Parties will all be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(e) of the Bankruptcy Code.**

**Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Exculpated Parties shall neither have, nor incur, any liability to any entity for any post-petition act taken or omitted to be taken through and including the Effective Date in connection with, or arising from or relating in any way to: (i) the Chapter 11 Case; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, or effecting the Disclosure Statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) the solicitation of votes for the Plan and the pursuit of Confirmation and consummation of the Plan; (iv) the administration of the Plan and/or the property to be distributed under the Plan; (v) any other pre-petition or post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation and wind-down of the Debtor; and (vi) any other act or omission, transaction, agreement, document, event or other occurrence relating to the foregoing, other than liability arising out of or relating to any act or omission of a Exculpated Party that constitutes fraud, gross negligence, willful misconduct, criminal conduct, malpractice, misuse and/or misappropriation of confidential information and/or intellectual property that causes damages, competition with the Debtor in violation of applicable non-competition agreements, or ultra vires act, as determined by a Final Order.**

**E.**     **Releases by the Debtor**

On the Effective Date and effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by the Released Parties, including, as applicable, (a) the compromise of Claims and other good and valuable consideration paid pursuant to the Plan, and (b) the services of the Released Parties facilitating the expeditious implementation of the Plan, the Debtor unconditionally, irrevocably, and forever discharges and releases the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, (i) the Chapter 11 Case, (ii) the formulation, negotiation, preparation, dissemination, implementation, administration, the Disclosure Statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) the solicitation of votes for the Plan and the pursuit of Confirmation and consummation of the Plan; (iv) the administration of the Plan and/or the property to be distributed under the Plan; (v) any other pre-petition or post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation and wind-down of the Debtor; and (vi) any other act or omission, transaction, agreement, document, event or other occurrence taking place on or before the Effective Date related or relating to the foregoing, including those that the Debtor would have been legally entitled to assert in its or their own right (whether individually or collectively) other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, gross negligence, willful misconduct, criminal conduct, malpractice, misuse and/or misappropriation of confidential information and/or intellectual property that causes damages, competition with the Debtor in violation of applicable non-competition agreements, or *ultra vires* act, as determined by a Final Order.

**F.**     **Releases**

On the Effective Date and effective as of the Effective Date, to the fullest extent permitted by applicable law, any holder of a Claim or Equity Interest that is Impaired or Unimpaired under the Plan shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Exculpated Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Exculpated Party, the liquidation of Claims before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any related agreements to the foregoing, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other

occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Exculpated Party that constitutes fraud, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires act as determined by a Final Order; provided, however, that the releases provided in this paragraph shall not apply to any holder of a Claim that elects to "opt out" of such releases by making such election on its timely submitted Ballot (to the extent that it receives a Ballot) or in a written notice submitted on or before the Plan Objection Deadline.

Notwithstanding anything to the contrary in the foregoing, the release by holders of Claims and Equity Interests set forth above does not release any Post-Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement, if any) executed to implement the Plan.

G.    Discharge of Claims

Except as otherwise provided for herein, (a) the rights afforded in the Plan and the treatment of all Claims and Equity Interests shall be in exchange for the discharge of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property or Estate; (b) the Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be discharged, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under Section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, its successors and assigns and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

H.    Injunction

This Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests. To that end, except as expressly provided herein, at all times on and after the Effective Date, through and including the date of entry of a Final Decree closing the Chapter 11 Case, all Persons who have been, are, or may be Holders of Claims against or Equity Interests in the Debtor arising before the Effective Date shall be enjoined from taking any of the following actions against or affecting the Estate, the Reorganized Debtor, or any of their respective Assets or property, and with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under this Plan):

1.    commencing or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date);

2.      **enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order;**

3.      **creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien;**

4.      **asserting any setoff or right of subrogation of any kind, directly or indirectly against any obligation due to the Debtor, its Estate, the Reorganized Debtor, or its property;** *provided***, that any defenses, offsets, or counterclaims which the Debtor, the Estate, or the Reorganized Debtor may have or assert in respect of the above referenced Claims are fully preserved to the extent provided in the Plan; and**

5.      **proceeding in any manner in any place whatsoever against the Debtor, its Estate, the Reorganized Debtor, or its property that does not conform to or comply with the provisions of this Plan.**

**Holders of Claims or Equity Interests arising before the Effective Date shall be enjoined from taking any action against any Exculpated Party that is released pursuant to Article VIII hereof.  Nothing contained in this Section shall prohibit the Holder of a Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor under this Plan.**

I.      <u>**Preservation of Rights of Action**</u>

1.      <u>Vesting of Causes of Action</u>.

(a)      Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest upon the Effective Date in the Reorganized Debtor.

(b)      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action, in accordance with the terms of the Plan and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

(c)      Causes of Action and recoveries therefrom shall remain the sole property of the Reorganized Debtor. Holders of Claims shall have no right to any such recovery.

2.      <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>.

(a)      Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and the Reorganized Debtor expressly reserve such

retained Cause of Action for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against any Entity, including, without limitation, the plaintiff or co-defendant in such lawsuits.

(b)     Subject to the immediately preceding paragraph, and except as otherwise released under the Plan, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or has received services from the Debtor or a transfer of money or property of the Debtor, or has received services from the Debtor or a transfer or money or property of the Debtor, or has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor has objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtor or as disputed, contingent, or unliquidated.

## IX.
## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.     To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, approve any necessary Claims reconciliation protocols, or resolve any controversy as to the classification of a Claim in a particular Class under the Plan;

2.     To administer the Plan;

3.     To liquidate any Disputed Claims;

4.     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in

connection with the Litigation; *provided*, *however*, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate jurisdictions;

5.      To hear and determine any and all motions and/or objections to fix and allow any Claims arising therefrom;

6.      To hear and determine any and all applications by Professionals for an award of Professional Fees;

7.      To enable the Reorganized Debtor to commence and prosecute any Litigation which may be brought after the Effective Date;

8.      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12.     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure; and

13.     Upon full and complete administration, to close the Chapter 11 Case.

## X.
## MISCELLANEOUS

### A.      Revocation of Plan of Reorganization

The Debtor reserves its right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If the Debtor revokes or withdraws the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void. In the event that this Plan or the Confirmation Order is revoked or withdrawn, nothing in this Plan, and no actions taken in preparation for consummation of this Plan shall (i) constitute a waiver or release of any Claim by or against or Equity Interest in the Debtor; (ii) prejudice in any manner the rights of the Debtor; (iii) constitute an admission, acknowledgment, offer or undertaking by

the Debtor or any other entity or party in interest; or (iv) constitute a waiver or release of the rights of the Debtor to move to dismiss any of the Chapter 11 Case or convert any of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

**B.**     **Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.**     **Exhibits**

All Exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Proponent reserves the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

**D.**     **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

BIELLI & KLAUDER, LLC
Attn: David M. Klauder, Esq.
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

**E.**     **Reservation of Rights**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan,

shall:  (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case involving the Proponent, except with respect to Confirmation of the Plan.

## F.    **Defects, Omissions and Amendments**

The Debtor may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

## G.    **Filing of Additional Documents**

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## H.    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

## I.    **Setoffs and Recoupments**

The Reorganized Debtor may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, or the Estate, as applicable, may have against the Holder of such Claim. Neither the failure to exercise a right of setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Reorganized Debtor, or the Estate, against such Holder.

Notwithstanding anything in the Plan Documents to the contrary, (a) any setoff or recoupment claims held by Creditors shall be preserved as set forth under Sections 506 and 553 of the Bankruptcy Code and other applicable authority, and (b) a Creditor shall receive notice and an opportunity to object with respect to any setoff or recoupment that the Reorganized Debtor may seek to exercise against it.

## J.    Tax Exemption

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtor, if on the Effective Date, and the Reorganized Debtor, if after the Effective Date, of the Debtor's property in implementation of or as contemplated by this Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

## K.    Securities Exemption

Any rights issued under, pursuant to, or in effecting this Plan, and the offering and issuance thereof by any party, including without limitation, the Reorganized Debtor, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

## L.    Plan Interest Rate

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in this Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

## M.    Implementation

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

## N.    Record Date

To the extent a "Record Date" is required for implementation of this Plan, the record date shall be the Record Date established by the Bankruptcy Court in the Interim Approval and Procedures Order or such other date as the Bankruptcy Court may set.

## O.    Certain Actions

1.    By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the cancellation or issuance of Equity Interests in the Debtor, (iii) the adoption, execution, delivery, and implementation of all contracts, instruments, releases, and other agreements or documents related to the Plan, and (iv) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the applicable Debtor is chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtor.

2.    Effective upon the Effective Date, each of the Debtor's formation documents shall each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.    On or as soon as practicable following the Effective Date, the Reorganized Debtor shall be authorized to cancel, annul, and extinguish all Equity Interests in the Debtor as provided in Section III.B.3 of this Plan.

## P.    Waiver of Fourteen-Day Stay

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  December 16, 2019                    Respectfully submitted,


                                            FIZZCIS GROUP, INC.


                                            */s/ Thomas Steckbeck*
                                            By:  Thomas Steckbeck
                                            Title:  Chief Executive Officer